**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**January 5, 2018**

**FOR THE TENTH CIRCUIT**
_____

ROCKY MOUNTAIN WILD, INC., a
Colorado non-profit corporation,

     Plaintiff - Appellant,

v.

No. 17-1119

UNITED STATES FOREST SERVICE, a
federal agency; UNITED STATES
DEPARTMENT OF AGRICULTURE, a
federal agency,

     Defendants - Appellees.
_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:15-CV-00127-WJM-CBS)**
_____

Travis E. Stills of Energy and Conservation Law (and Matthew Sandler of Rocky
Mountain Wild, Denver, Colorado, on the briefs), Durango, Colorado, for Plaintiff -
Appellant.

Karl L. Schock, Assistant United States Attorney (and Robert C. Troyer, Acting United
States Attorney, on the brief), Denver, Colorado, for Defendants - Appellees.
_____

Before, **PHILLIPS**, **KELLY**, and **McHUGH**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Plaintiff-Appellant Rocky Mountain Wild appeals from the district court's determination of law that Defendant-Appellee U.S. Forest Service has no duty under the Freedom of Information Act (FOIA) to disclose unseen documents in possession of third-party contractors. Rocky Mountain Wild, Inc. v. U.S. Forest Serv., 230 F. Supp. 3d 1245, 1246 (D. Colo. 2017). The question on appeal is whether the documents are "agency records" within the meaning of FOIA. We have jurisdiction under 28 U.S.C. § 1291 and affirm because the documents were not created, obtained, or controlled by the Forest Service.

## Background

The underlying dispute arises from Rocky Mountain Wild's FOIA request concerning a land exchange proposal called the Wolf Creek Project. Aplee. Supp. App. 2–4. The project proponent, the Leavell-McCombs Joint Venture (LMJV), wanted to exchange privately owned land for federal land within the Rio Grande National Forest. Id. at 2–3. LMJV and the Forest Service entered into a Memorandum of Understanding (MOU) whereby LMJV agreed to hire a third-party contractor to prepare an environmental impact statement (EIS) for the proposed exchange. Aplt. App. 145. They selected Western Ecological Resource, Inc., to prepare the EIS in accordance with the MOU, and LMJV and Western Ecological entered into an employment agreement to that effect. Id. at 101. After distributing a draft for public comment, the Forest Service published the final EIS, and Rocky Mountain Wild filed its FOIA request that same day. Aplee. Supp. App. 3–4.

2

Rocky Mountain Wild and the Forest Service were able to agree on the disclosure of all requested materials except for one category: documents in Western Ecological's (and 13 subcontractors') possession that were never shared with the Forest Service. Rocky Mountain Wild, 230 F. Supp. 3d at 1246–47. The Forest Service filed a motion for a determination of law regarding its obligation under FOIA to produce these records, and the district court ruled that the Forest Service has "no duty, under the circumstances, to disclose third-party contractors' records that it has never seen or relied upon." Id. at 1246. Specifically, the district court assumed (for the sake of argument) that the Forest Service created the records, id. at 1248, and held that "the Forest Service does not exercise sufficient 'control' to make those records 'agency records' for FOIA purposes," id. at 1252.

**Discussion**

Whether an agency has improperly withheld a record from a FOIA request is a question of law that we review de novo. See Trentadue v. Integrity Comm., 501 F.3d 1215, 1226 (10th Cir. 2007). Here, the Forest Service argues that the contractor documents were not improperly withheld, because they are not "agency records" subject to FOIA. To be "agency records," (1) "an agency must 'either create or obtain' the requested materials" and (2) "the agency must be in control of the requested materials at the time the FOIA request is made." U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 144–45 (1989) (quoting Forsham v. Harris, 445 U.S.

3

169, 182 (1980)).  The burden is on the agency to demonstrate that the requested

materials are not agency records.  <u>Id.</u> at 142 n.3.

A.	Whether the Forest Service Created or Obtained the Requested Materials

The first issue is whether the Forest Service created or obtained the requested materials. By FOIA's terms, an "agency" "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1) (2012). "In general, FOIA . . . does not apply to private companies, persons who receive federal contracts or grants, private organizations, or state or local governments." H.R. Rep. No. 112-689, at 5 (2012) (footnote omitted).

Here, private contractors — not the Forest Service — created the requested materials. For a private organization to be considered "federal" for FOIA purposes, there must be "substantial federal supervision of the private activities" apart from the supervision "necessary to assure compliance" with agency goals. Forsham, 445 U.S. at 180 n.11. "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" United States v. Orleans, 425 U.S. 807, 814 (1976) (quoting Logue v. United States, 412 U.S. 521, 528 (1973)). Taking "action to compel compliance with federal standards" or fixing "specific and precise conditions to implement federal objectives" is not substantial enough federal supervision for a private organization to be considered a federal agency. Id. at 815–16.

The Forest Service did not exercise sufficient control over Western Ecological or the subcontractors for the requested materials to have been created by an

5

"agency."  The employment agreement between LMJV and Western Ecological provided that the EIS would "be prepared under Forest Service supervision," Aplt. App. 101, but that supervision consisted of meeting with and briefing the Forest Service on various topics and working closely with the Forest Service to complete a list of tasks, see id. at 102–03.  This does not constitute detailed control over the contractor's day-to-day performance that would make the contractor a federal instrumentality or FOIA agency.  See Forsham, 445 U.S. at 180.

The term "agency records" applies not only to materials generated within an agency, but also to materials acquired from outside organizations.  Tax Analysts, 492 U.S. at 144–45 ("The legislative history of the FOIA abounds with . . . references to records acquired by an agency." (quoting Forsham, 445 U.S. at 184)).  Whether materials are "agency records" does not "turn on the intent of the creator."  Tax Analysts, 492 U.S. at 147.  That is, the definition of "agency records" does not depend on whether materials originating outside an agency were "prepared substantially to be relied upon in agency decisionmaking."  Id.  If the materials were not created by the agency itself and were never acquired by the agency, the materials are not "agency records" even if they were prepared by a contractor acting on the agency's behalf.  See Forsham, 445 U.S. at 171.

Rocky Mountain Wild does not argue that the Forest Service has ever acquired or seen the requested materials.  Instead, it argues that documents relied upon or indirectly considered by an agency are "agency records."  However, "reliance on a document does not make it an agency record if it has not been created or obtained by

6

a federal agency." Forsham, 445 U.S. at 177 n.7. Reliance may be relevant "to the question of whether a record in the possession of an agency is an 'agency record,'" id. (emphasis added), but "without first establishing that the agency has created or obtained the document, reliance or use is . . . irrelevant," id. at 186. The Forest Service does not possess the documents at issue, making reliance irrelevant.

Rocky Mountain Wild also argues that the Forest Service "accepted" the records by indirectly relying on them, citing Bar MK Ranches v. Yuetter, 994 F.2d 735 (10th Cir. 1993), and Rohrbough v. Harris, 549 F.3d 1313 (10th Cir. 2008). But the cited language from Bar MK Ranches concerns the scope of the administrative record — not the definition of "agency record" — for the purposes of challenging agency action under the Administrative Procedure Act (APA). See 994 F.2d at 739. And while the court in Rohrbough stated, "If a judge makes a decision based on materials presented to him or her, even if the materials are not formally filed, they could be said to be 'accepted' by agency personnel," 549 F.3d at 1318, this language is inapposite here, where the requested materials were never presented to the agency.

The district court expressed concern over a perceived "blind spot" in the Tax Analysts approach:

> If "created" is construed strictly to mean "created by an agency employee," then agencies could largely avoid FOIA by delegating tasks to outside contractors, reviewing those contractors' work in a manner that avoids actually "obtaining" any documents (such as through an on-site visit), and then instructing the contractor only to transmit a particular subset of work product back to the agency.

7

Rocky Mountain Wild, 230 F. Supp. 3d at 1248. However, those facts are not present here. Regardless, the above scenario can be remedied through the APA, rather than FOIA. As the court explained in Bar MK Ranches, under the APA, a district court reviews an agency action based on the full administrative record (not merely on agency records), which "consists of all documents and materials directly or indirectly considered by the agency."[1] 994 F.2d at 739.

Here, private contractors, not the Forest Service, created the documents. And as the Forest Service has never even <u>seen</u> the requested materials, it cannot be fairly said that the Forest Service ever obtained them. Accordingly, the Forest Service has met its burden of showing that the contractor documents do not satisfy the first part of Tax Analysts' definition of "agency records."

B.    Whether the Forest Service Controlled the Requested Materials

For the requested materials to constitute "agency records," the Forest Service must <u>also</u> have controlled the materials at the time of the FOIA request. See Tax Analysts, 492 U.S. at 145. "By control we mean that the materials have come into the agency's <u>possession</u> in the legitimate conduct of its official duties." Id. (emphasis added). Rocky Mountain Wild concedes that the Forest Service does not possess the contractor documents but nevertheless argues that the terms of the MOU and employment agreement grant the Forest Service control over the documents.

---

[1] In fact, Rocky Mountain Wild brought a challenge to the adequacy of the administrative record — and succeeded — in a separate district court proceeding. See Rocky Mountain Wild v. Dallas, No. 15-cv-01342-RPM (D. Colo. May 19, 2017), ECF No. 67.

We disagree. The employment agreement between LMJV and Western Ecological contains a provision that in the event of a legal challenge to the Wolf Creek Project, Western Ecological "must make available to the Forest Service any information requested by the Forest Service." Aplt. App. 103. However, it does not matter that the Forest Service <u>could</u> possess the documents by requesting them from Western Ecological: a federal right of access does not render a private organization's data "agency records" subject to FOIA, because "FOIA applies to records which have been <u>in fact</u> obtained, and not to records which merely <u>could have been</u> obtained." <u>Forsham</u>, 445 U.S. at 186.

Rocky Mountain Wild also claims that the Forest Service has "constructive control" over the requested materials, citing <u>Burka v. U.S. Department of Health & Human Services</u>, 87 F.3d 508 (D.C. Cir. 1996). This argument failed to persuade the district court, which applied the factors laid out in <u>Burka</u> to determine that the Forest Service did not have constructive control over the requested materials. <u>Rocky Mountain Wild</u>, 230 F. Supp. 3d at 1248–52. We do not find it necessary to apply the <u>Burka</u> factors to conclude that the Forest Service did not control the documents.

In <u>Burka</u>, the D.C. Circuit found that data collected by a private contractor were "agency records," despite not having been created by agency employees nor located on agency property, because of the "extensive supervision and control exercised by the agency over collection and analysis of the data." 87 F.3d at 515. Regardless of whether this "constructive control" theory is consistent with Supreme Court precedent, <u>see generally</u> <u>Bloomberg L.P. v. Bd. of Governors of the Fed.</u>

9

Reserve Sys., 649 F. Supp. 2d 262, 275 (S.D.N.Y. 2009), aff'd, 601 F.3d 143 (2d Cir. 2010), Burka is distinguishable because there, the agency planned to take physical possession of the data in the near future, 87 F.3d at 515. And in Burka, the government did not appear to contest the requesting party's claim that the agency exercised constructive control over the data. 87 F.3d at 515 n.5. Here, there is no suggestion that the Forest Service ever plans to exercise its right to obtain the contractor documents, and it emphatically contests the constructive control issue.

Because the Forest Service never possessed the contractor documents, it could not have controlled them at the time of the FOIA request. The Forest Service has therefore met its burden of demonstrating that the requested materials do not satisfy the second part of Tax Analysts' definition of "agency records."

C.      Whether the Requested Materials Are Agency Records by Contract

Rocky Mountain Wild makes two additional arguments for why the requested materials are "agency records": (1) the materials are Forest Service property and (2) Western Ecological contractually maintains the materials. The first of these is based on the employment agreement between LMJV and Western Ecological, which provides that Western Ecological's work product "will be considered Forest Service work product belonging to the Forest Service."[2] Aplt. App. 101. Rocky Mountain Wild argues that an agency's contractual ownership of documents renders them

---

[2] The MOU between the Forest Service and LMJV similarly provides, "All work product created pursuant to this Agreement, including but not limited to, all data and analyses, shall be the property of the Forest Service." Aplt. App. 154. But the MOU also provides that it is nonbinding and "creates no right, benefit, or trust responsibility, substantive or procedural, enforceable at law or equity." Id. at 155.

10

"agency records," citing <u>Gilmore v. U.S. Department of Energy</u>, 4 F. Supp. 2d 912 (N.D. Cal. 1998).

The <u>Gilmore</u> court based its contractual ownership rule, in part, on the premise that "as a policy matter, the government should not be able to avoid all of its FOIA obligations merely by storing its records offsite." 4 F. Supp. 2d at 923 n.5. This concern was alleviated by the 2007 amendments to FOIA, which incorporated information maintained through a records management contract into the definition of "record." <u>See</u> OPEN Government Act of 2007, Pub. L. No. 110-175, § 9, 121 Stat. 2524, 2528–29. Additionally, the <u>Gilmore</u> court cited <u>Forsham</u> for the proposition that "[r]ecords of a nonagency can become agency records by contract." <u>Gilmore</u>, 4 F. Supp. 2d at 917. But in <u>Forsham</u>, whether the agency owned the requested documents did not "resolve with mathematical precision" the agency records issue. 445 U.S. at 181. Moreover, <u>Forsham</u> held that <u>non</u>ownership suggests that a document is <u>not</u> an agency record. <u>Id.</u> at 180–81. It is an inverse error to infer from this that <u>ownership</u> necessarily means that a document <u>is</u> an agency record. Consequently, we are not persuaded by <u>Gilmore</u>'s reasoning.

By contrast, the D.C. Circuit has held that ownership is not equivalent to control and has declined to conclude that documents are "agency records" simply because an agency has property interests in them. <u>See</u> <u>Judicial Watch, Inc. v. Fed. Hous. Fin. Agency</u>, 646 F.3d 924, 927 (D.C. Cir. 2011). We agree with the district court's assessment that while "ownership is <u>relevant</u> to control," "the Forest Service's ownership amounts to little more than the <u>ability</u> to obtain information,

11

which does not create a <u>duty</u> to obtain information." <u>Rocky Mountain Wild</u>, 230 F. Supp. 3d at 1251.

Rocky Mountain Wild also argues that the requested materials are "agency records" under 5 U.S.C. § 552(f)(2)(B) because they are contractually maintained by Western Ecological. Provisions of the employment agreement between LMJV and Western Ecological require Western Ecological to document all of its work relating to the preparation of the EIS and to maintain and index those documents "in a system pursuant to Forest Service direction." Aplt. App. 102. Rocky Mountain Wild contends that these provisions render Western Ecological's documents "agency records" under § 552(f)(2)(B), which defines "record" as any information that would be an agency record when maintained <u>by</u> an agency "that is maintained <u>for</u> an agency by an entity under Government contract, <u>for the purposes of records management</u>" (emphasis added).

This is an overexpansive reading of § 552(f)(2)(B). <u>See</u> <u>Am. Small Bus. League v. U.S. Small Bus. Admin.</u>, 623 F.3d 1052, 1053–54 (9th Cir. 2010). As the court stated in <u>Ryan v. FBI</u>, 113 F. Supp. 3d 356 (D.D.C. 2015), "This provision primarily addresses the availability of physical documents committed to the custody of a third-party for storage, and does not necessarily impose an affirmative obligation to search for and produce documents in the possession of third party contractors." 113 F. Supp. 3d at 363. Western Ecological was not hired to manage the Forest Service's records; it was hired to prepare an EIS. The provisions in the employment agreement between LMJV and Western Ecological (assuming it can be considered a

12

"government contract") amount to little more than an agreement that Western Ecological would document its work in an orderly way.

Furthermore, the legislative history of the OPEN Government Act, which added § 552(f)(2)(B) to FOIA in 2007, supports the conclusion that § 552(f)(2)(B) was not intended to encompass these types of records. See S. Rep. No. 110-59, at 7 (2007) ("This section clarifies that agency records kept by private contractors licensed by the government to undertake recordkeeping functions remain subject to FOIA just as if those records were maintained by the relevant government agency."); id. at 23–24 (noting that the Department of Justice did not object to the addition of § 552(f)(2)(B) "if its intention is solely to clarify that agency-generated records held by a Government contractor for records-management purposes are subject to FOIA," but that it "would have very serious concerns" if it "were intended to disturb over twenty-five years of settled law by overruling the Forsham and Tax Analysts decisions"). Accordingly, we reject Rocky Mountain Wild's argument that the requested materials are "agency records" under § 552(f)(2)(B).

As the Forest Service did not create, obtain, or control the requested materials, we hold that they are not "agency records" subject to FOIA.

AFFIRMED.

13